## Triangle Motors Company v. Smith.

(Decided October 26, 1926.)

### Appeal from Estill Circuit Court.

1. New Trial.—Trial judge held not to have erred in determining that attorney suffering from flu was unavoidably prevented from filing application for new trial within three days, and permitting filing on fourth day.

2. False Imprisonment.—In order that one not participating in act of arrest be held liable, it must appear that he instigated proceeding or procured arrest by direction or advice.

3. False Imprisonment.—Evidence held insufficient to show that one alleged to have procured false arrest and imprisonment gave any direction for his arrest.

4. False Imprisonment—Arrest Held Not Ratified by Promising to Send Representative to Look After Matter.—Defendant, which, on being advised by chief of police that he was holding plaintiff and supposedly stolen car, wired that it would send representative to look after matter, held not to have ratified arrest so as to be liable for false imprisonment.

ROBT. R. FRIEND for appellant.

BEN H. SCOTT and O. H. POLLARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In this action for false arrest and imprisonment by Elisha Smith against the Triangle Motors Company, a corporation, and G. M. Haney, chief of police of the town of Irvine, Haney went out on a peremptory instruction and plaintiff recovered a verdict and judgment in the sum of $2,500.00 against the Triangle Motors Company. The latter appeals.

At the outset we are met by the contention that we can not consider the evidence because the motion and grounds for a new trial were not filed within three days as required by section 342, Civil Code. That section provides that the application for a new trial "shall be within three days after the verdict or decision is rendered, unless *unavoidably prevented*." It appears from the affidavits that appellant's counsel, Mr. Friend, though present in court and assisting in the trial of other cases during the three days in question, was suffering from an attack of the flu and was so ill that he could not grasp the questions presented or do himself justice in the con-

duct of the suits. The circuit judge before whom he appeared was of the opinion that on the showing made he was "unavoidably prevented" from filing the application for a new trial within the three days, and we are not prepared to say that he erred in this conclusion or in permitting the application to be filed on the fourth day.

The facts are these: Appellant has the agency for the Hudson and Essex cars in portions of Kentucky, and sells used cars which it acquires in exchange. Along about the first of June, 1922, it turned over to Smith a second-hand Chevrolet truck and a second-hand Scripps-Booth passenger car for sale on commission, the cars to be returned if not sold within ten days. Appellant heard nothing further from Smith until the receipt of a letter dated June 11, stating that the passenger car was wrecked at Frenchburg, that he needed $25.00 and that he thought he could sell the car for $550.00. As a matter of fact the car had not been wrecked at Frenchburg and was never there. Appellant sent Smith a check for $25.00, which Smith claimed not to have received. On July 10th following, appellant had a telephone call from Kinkead Wilson Motor Company of Lexington stating that there was a man at Lexington offering a Scripps-Booth car for sale at $300.00. Appellant asked the Kinkead Wilson Motor Company to report upon the return of the young man, but later received information from that company that Smith had not returned. Later on, Smith sold the Scripps-Booth car to J. B. Johnson, a railroad conductor, for $400.00. The consideration was paid in cash, and Smith promised to furnish a bill of sale. Days passed without the bill of sale being furnished, and Johnson, whose suspicions had become aroused, reported the facts to G. M. Haney, chief of police of Irvine. Smith was in Irvine at the time and was approached by Haney and Johnson. He admitted the receipt of the money, but claimed that he was working for the Triangle Motors Company. Thereupon Haney called up J. W. Button, appellant's manager. At this point the evidence is conflicting. On his direct examination Haney testified as follows:

"So I got Button over the telephone and I asked him if he had a man by the name of Smith from Jackson, Kentucky, selling used cars. He said, 'no, sir, I have not, I haven't got a man in my employ by the name of Smith,' and he said, 'I don't know

anybody by the name of Smith from Jackson, Kentucky,' and then I gave him the number of the car and told him he had sold it for $400.00, the Scripps-Booth. He said, 'That is my car; it was stolen from this place about three weeks ago.' He said, 'Hold the car,' and there was nothing else for me to do but to hold Smith.

"Q. 7. Who was city attorney of Irvine at that time?

"Q. By the Court: What was it he told you?

"A. He told me he had no man in his employ by the name of Smith, and that he knew nobody from Jackson, Kentucky, by the name of Smith, and that the car was stolen about three weeks ago, and to hold the car, and that is exactly my conversation, exactly the conversation we had over the telephone."

Later on, when he was called for further examination, Haney testified as follows:

"Q. I will ask you if in this typewritten statement there, in your presence, if you didn't state this, 'Mr. Button advised Mr. Haney that there was no man by the name of Smith working for him, for Haney to hold the car, Mr. Button didn't say anything about arresting him or anything else.' "

"A. Well, sir, I believe I made that statement, but now it has been two years or over, and I could be mistaken about that, but when I made that statement I was confident I was correct. I know he told me to hold the car, but as to whether he said to hold Smith I can't be positive about it, but I know I was talking to Button."

On the other hand, Button denied that he told Haney that the car had been stolen, but merely told him "that was our car, and to hold that car and not to allow it to be sold." Later on, Haney arrested Smith and placed him in jail, where he was confined until July 19th and then released on his making a settlement with Johnson by delivering him another car which he claimed to own and on which there was a lien for $100.00. On July 18th, Haney sent appellant the following telegram:

"Am holding E. Smith and stolen car (Scripps-Booth). Please advise."

On the next day appellant sent Haney the following reply:

"Will have representative Irvine tomorrow to look after matter."

Before one not participating in the act of arrest can be held liable for unlawful arrest and imprisonment it must appear that he instigated the proceeding, or procured the arrest by directing the arrest or advising that the arrest be made. Therefore, Smith's whole case turns on whether Mr. Button, appellant's manager, told Haney to hold Smith, and this depends on Haney's evidence. Examination of Haney's evidence shows that he first testified that Button said, "Hold the car." Afterwards he testified that Button said, "Hold the car," and added that this was exactly the conversation they had over the telephone. In his typewritten statement he said, in substance, that Mr. Button advised him to hold the car, but said nothing about arresting Smith or anything else. In referring to this statement he finally said, "But when I made that statement I was confident I was correct. I know he told me to hold the car, but as to whether he said to hold Smith I can't be positive, but I know I was talking to Button." This statement is no stronger than if Haney had said he did not remember whether Button said "Hold Smith" or not. It is apparent, therefore, that he did not testify with any degree of certainty as to the main fact necessary to make out appellee's case. But the point is made that after appellant was notified that Smith was being held it telegraphed Haney that it would have a representative in Irvine the following day to look after the matter, and this amounted to ratification of Haney's act in making the arrest. There is nothing in this telegram from which it could be remotely inferred that appellant after being apprised of Smith's arrest either directed, aided, encouraged or advised his continued detention. Not only so, but appellant's representative on his arrival in Irvine did not ask or encourage Smith's detention or insist that he be prosecuted. We are therefore of the opinion that the arrest was never ratified by appellant.

It follows that appellant's motion for a peremptory instruction should have been sustained.

All other questions are reserved.

Judgment reversed and cause remanded for a new trial consistent with this opinion.